IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

APPEAL NO. 25-2148

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

ANTONIO DIXSON,

Defendant – Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION
THE HONORABLE AUDREY G. FLEISSIG

**BRIEF OF APPELLANT ANTONIO DIXSON**

**NEWTON BARTH, L.L.P.**

By:  /s/ Talmage E. Newton IV
Talmage E. Newton IV, MO56647
talmage@newtonbarth.com
555 Washington Ave., Ste. 420
St. Louis, Missouri 63101
Telephone:  (314) 272-4490
Facsimile:  (314) 762-6710

***ATTORNEY FOR APPELLANT
ANTONIO DIXSON***

## SUMMARY OF ARGUMENT AND REQUEST FOR ORAL ARGUMENT

The sole point on appeal is whether the 2023 amendments to Fed. Rule Evid. 702 impose stricter gatekeeping duties on the district court to ensure that the basis for an expert witness' opinion is evidence-based and objective. The district court committed reversable error by allowing an unqualified law enforcement witness to testify as an expert witness.

Appellant was convicted by a jury of a variety of gun and drug charges arising out of two separate law enforcement encounters, to wit: one-count of possession with intent to distribute paraflourofentanyl, PCP, fentanyl, methamphetamine, and cocaine pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(C); two-counts of possession of a firearm in furtherance of a drug trafficking crime pursuant to 18 U.S.C. §§ 924(c)(1)(A), (A)(i); two-counts of felon in possession of a firearm pursuant to 18 U.S.C. §§ 922(g)(1), 924(a)(2); one-count of possession with intent to distribute methamphetamine and cocaine base pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(C); and one-count of possession of a defaced firearm pursuant to 18 U.S.C. §§ 922(k), 924(a)(1) Appellant was sentenced to the custody of the United States Bureau of Prisons for a term of 168 months, followed by three years of supervised release.

Appellant believes the Court would benefit from oral arguments and believes that 15 minutes per side is sufficient.

Appellate Case: 25-2148    Page: 2    Date Filed: 08/29/2025 Entry ID: 5553036

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT AND REQUEST FOR ORAL ARGUMENT …...ii

TABLE OF CONTENTS …………………………………………….......iii

TABLE OF AUTHORITIES …………….…………………………...iv

JURISDICTIONAL STATEMENT ………………………………………1

STATEMENT OF ISSUES ………………………………………………..2

STATEMENT OF THE CASE …...……...………………………...............3

SUMMARY OF THE ARGUMENT ……………………………….........17

ARGUMENT …………………………………………………... 18

CONCLUSION ………………………………………………… 25

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ……………… 26

CERTIFICATE OF SERVICE …………………………………… 26

Appellate Case: 25-2148    Page: 3    Date Filed: 08/29/2025 Entry ID: 5553036

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Adams v. Toyota Motor Corp.*, 867 F.3d 903 (8th Cir. 2017) .................................22

*Barrett v. Rhodia, Inc.*, 606 F.3d 975 (8th Cir. 2010) .............................................18

*Daubert* v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993) ................... passim

*Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017 (9th Cir. 2022) ..............................24

*Engilis v. Monsanto Co.*, F.4th, 2025 WL 2315898 (9th Cir. 2025). .......................24

*Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986 (8th Cir. 2001) ......................20

*Hellen v. American Family Insurance Co.*, 2024 WL 1832451 (D. Colo. 2024)…..
.........................................................................................................................2, 24

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 681 F. Supp.
3d 993 (D. Minn. 2023). ...............................................................................18

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ...................................... 21, 22

*Lauzon v. Senco Prods., Inc.*, 270 F.3d 681 (8th Cir. 2001) ...................................21

*Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748 (8th Cir. 2006).........................21

*Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524 (8th Cir. 2006).......................21

*Post v. Hanchett*, 2024 WL 474484 (D. Kan. 2024) ...........................................2, 24

*Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638 (8th Cir. 2009) .................20

*Russell v. Whirlpool Corp.*, 702 F.3d 450 (8th Cir. 2012) ......................................22

*Sappington v. Skyjack, Inc.*, 512 F.3d 440 (8th Cir. 2008)....................................20

*United States v. Crawfor*d, 413 F.3d 873 (8th Cir. 2005) ......................................18

iv

*United States v. Evans*, 272 F.3d 1069 (8th Cir.2001) ............................................23

*United States v. Molina*, 172 F.3d 1048 (8th Cir.1999) ..........................................23

*Unrein v. Timesavers, Inc.*, 394 F.3d 1008 (8th Cir. 2005)................................2, 23

**STATUES**

18 U.S.C. § 922 ............................................................................................. ii, 1, 5

18 U.S.C. § 924 .......................................................................................... ii, 1, 4, 5

21 U.S.C. § 841 .......................................................................................... ii, 1, 4, 5

28 U.S.C. § 1291 ...................................................................................................1

**RULES**

Fed R. App. P. 32 ................................................................................................26

Fed. R. Crim. P. 16..............................................................................................9

Fed. R. Evid. 403 ...............................................................................................23

Fed. R. Evid. 702 ....................................................................................... passim

Fed. R. Evid. 703 .................................................................................................9

Fed. R. Evid. 705 .................................................................................................9

# JURISDICTIONAL STATEMENT

The United States originally invoked the district court's jurisdiction under 18 U.S.C. §§922(g), 922(k) & 924(c), and 21 U.S.C. § 841(a)(1).

A jury trial was held in the United States District Court for the Eastern District of Missouri before the Honorable Audrey G. Fleissig, United States Senior District Judge. The jury returned a finding of guilty as to all counts. Judgment and sentence were entered by the district court on June 3, 2025. Dixson filed a timely notice of appeal on June 3, 2025. The case number below is 4:21-cr-00054-AGF-1.

The United States Court of Appeals for the Eighth Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which provides for jurisdiction over final orders subject to appeal.

1

## <u>STATEMENT OF ISSUES & APPOSITE CASES</u>

Did the 2023 amendments to Federal Rule of Evidence 702 impose stricter gatekeeping duties on the district court to ensure that the basis for an expert witness' opinion, specifically that of a "law enforcement drug practices expert," is evidence-based and objective. In this case, did the district court committed reversable error by allowing Detective Scanlon to testify as an expert witness under F.R.E. 702, about whether certain evidence in this case was indicative of an "intent to distribute" narcotics rather than simple possession of narcotics?

- *Federal Rule of Evidence 702, as amended in 2023*

- *Post v. Hanchett*, 2024 WL 474484 (D. Kan. Feb. 7, 2024)

- *Hellen v. American Family Insurance Co.*, 2024 WL 1832451 (D. Colo. March 19, 2024)

# STATEMENT OF THE CASE

■ **Procedural History**

The procedural history of the case is complicated. In the nearly 53-months from original indictment to judgment[1] there were two superseding indictments[2], a co-defendant who resolved his case by plea (R. Doc. 151), some staggered motion practice which resulted in the case going from the magistrate judge to the district court back to the magistrate judge and then back to the district court (R. Doc. 192), and numerous trial settings, including a mistrial, before the case was finally presented to and heard by a jury.[3] This abbreviated procedural history attempts to distil the case to the events and information relevant to the issue presented on appeal.

---

[1] The original indictment (R. Doc. 1) was filed on January 27, 2021, while the Judgment (R. Doc. 351) was entered on June 3, 2025.

[2] The original indictment @ R. Doc._1; a first superseding indictment @ R. Doc. 23; and a second superseding indictment @ R. Doc. 179.

[3] Trial was initially set for December 5, 2022 (R. Doc. 165). On the Appellant's moton (R. Doc. 171) that trial setting was continued to February 6, 2023 (R. Doc. 172). That February 2023 trial setting was vacated by the district court and the matter was referred back to the Magistrate for additional motion practice (R. Doc. 192). Appellant again moved to continue the trial setting (R. Doc. 231) and the case was reset to December 4, 2023, for trial (R. Doc. 232). At the Government's motion this time (R. Doc. 240) the trial was again continued to

3

Ultimately, the jury considered the allegations contained in the second superseding indictment (R. Doc. 179), which charged Appellant with seven drug and gun counts arising from two separate law enforcement encounters on two separate dates.[4] The Government's theory was that on two separate dates Appellant Antonio

---

January 22, 2024 (R. Doc. 242). On the first day of that trial setting Appellant's counsel was discharged due to a breakdown in communication between the Appellant and counsel (R. Doc. 268). New counsel was then appointed (R. Doc. 271) and trial was reset to June 25, 2024 (R. Doc. 286). In response to Appellant's motion to strike experts (R. Doc. 284), which is discussed more fully later, that June 2024, trial setting was vacated and reset to October 28, 2024 (R. Doc. 291). The parties began selecting a jury on October 28, 2024. (R. Doc. 301). After an extended voir dire a mistrial was declared due to a lack of eligible jurors. *Id.* Trial was reset to January 27, 2025 (R. Doc. 303) and then continued again to February 18, 2025 (R. Doc. 311) and then continued yet again (R. Doc. 319) to February 24-26, 2025. (R. Doc. 322, 323, and 324).

[4] The Second Superseding Indictment charged one-count of possession with intent to distribute paraflourofentanyl, PCP, fentanyl, methamphetamine, and cocaine pursuant to 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C); two-counts of possession of a firearm in furtherance of a drug trafficking crime pursuant to 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 924(c)(1)(A)(i); two-counts of felon in possession of a firearm pursuant to 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2); one-count of possession with intent

4

Dixson possessed drugs with the intent to distribute them, and was both a felon in possession of a firearm (two firearms on each of the separate encounters), and possessed those firearms in furtherance of the drug trafficking allegations (and on one of those dates one of the guns he possessed had an obliterated serial number).

The Appellant was eventually convicted on all counts of the second superseding indictment (R. Doc. 331) and sentenced by the district court (R. Doc. 351). A timely notice of appeal was filed the same day as the judgment was entered (R. Doc. 354) and this appeal follows.

- ■ **A summary of the Government's non-expert evidence against Antonio Dixson at trial.**

The second superseding indictment, on which Appellant proceeded to trial, charged a variety of drug and gun crimes arising from two separate law enforcement encounters, one on December 1, 2020, in Wentzville, Missouri (Counts 1, 2 and 3), and another on February 25, 2021, in the City of St. Louis (Counts 4, 5, 6, and 7). (Second Superseding Indictment, at R. Doc. 180).

- o **December 1, 2020, Arrest (Wentzville, Missouri)**

---

to distribute methamphetamine and cocaine base pursuant to 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C); and one-count of possession of a defaced firearm pursuant to 18 U.S.C. § 922(k) and 18 U.S.C. § 924(a)(1).

5

The evidence adduced at trial established that on December 1, 2020, officers with the Wentzville Police Department were patrolling a retail parking lot around midnight when they encountered an idling vehicle. (Tr. Vol. 1, 133:21-23; 134:15-19; 136:5-9). A license check showed the vehicle was connected to a different vehicle which was wanted for fleeing by the St. Louis Metropolitan Police Department. (Tr. Vol. 1, 136:10-13; 173:9-13; Tr. Vol. 2 102:8-11). Based on articulated reasonable suspicion Police conducted a felony stop of the vehicle. (Tr. Vol. 1, 137:19-21; 177:1-3; 178:5-10).[5] Police removed the occupants of the vehicle, including Appellant Dixson. (Tr. Vol. 1, 139:19-23). The traffic stop was recorded on video, which was played to the jury and narrated by the police officer at trial. (Tr. Vol. 1, 142-147). Mr. Dixson was initially observed with a cell phone (while in the vehicle) and then as he exited the vehicle a handgun was observed on his person (Tr. Vol. 1, 147:7-22; 158:11-25). As Mr. Dixson exited the vehicle, police witnessed a handgun and a cell fall from Mr. Dixson's person onto the parking lot. (Tr. Vol. 1, 179:6-11; 185:1-7; Tr. Vol. 2, 14:4-8). After a search of Mr. Dixson's person, another (second) firearm (Tr. Vol. 1, 150:17-19; 151:5-8; 179:21-25; 180:1-11), some loose ammunition (Tr. Vol. 1, 151:17-18; 180:25; 181:1-2, 14-23), six cell phones (Tr. Vol. 1, 161:12-15; 180:25; 192:25; 193:1), about $728.00 in currency (Tr. Vol. 1, 161:17; 188:20-21), and variety of controlled substances were seized

---

[5] Appellant is not contesting the legality of the stop.

Appellate Case: 25-2148    Page: 11    Date Filed: 08/29/2025 Entry ID: 5553036

from the Appellant. (Tr. Vol. 1 148-149; 153:19-25; 154:1-11; 181:1-2; 187:18-20; 193:18 to 194:16; Tr. Vol. 2, 15:1-9; 18-19; 21:6-12; 26:20-22; 22:12-17; 26:24-25). No drug paraphernalia was seized from Appellant Dixson. (Tr. Vol. 1 173:2-7; 194:17-25; 195:1-4; Tr. Vol. 2 23:1-12).

Subsequent laboratory testing identified the narcotics seized from the Appellant in the Wentzville encounter as including 30+ tablets of PCP (phencyclidine) and clonazepam (Tr. Vol. 2, 53:6-7; 54:11-12), eight tablets of fentanyl (Tr. Vol. 2, 55:8-17); approximately 100 capsules of para-flurofentanyl, fentanyl and morphine (Tr. Vol. 2, 5:8-10; 57:8), approximately 0.5-grams of cocaine (Tr. Vol. 2, 58:18-25; 59:5), 5.5-grams of methamphetamine (Tr. Vol. 2, 59:14-19), and 8.7-grams of marijuana (Tr. Vol. 2, 60:7-9).

This evidence was established by the law enforcement officers on the scene and supporting lab technicians who evaluated the drugs and guns. (Wentzville encounter is Tr. Vol. 1.: Sebert, Greer; and Tr. Vol. 2: Greer, Childers, Hampton, and Crabb).

   o **February 25, 2021, Arrest (St. Louis City)**

The evidence adduced at trial established that on February 25, 2021, St. Louis Metropolitan Police conducted a traffic stop on a vehicle in which the Appellant was a passenger. (Tr. Vol. 2, 73:6-9; 77-78).[6] The traffic stop and subsequent encounter

---

[6] Appellant is not contesting the legality of the stop.

Appellate Case: 25-2148    Page: 12    Date Filed: 08/29/2025 Entry ID: 5553036

with officers were captured on police body camera, which was played to the jury and narrated by the officers at trial. (Tr. Vol. 2, 78-79). Mr. Dixson was determined to have a federal warrant for his arrest and was removed from the vehicle to be arrested. (Tr. Vol. 2, 83:10-23). After Appellant was removed from the vehicle and searched (Tr. Vol. 2, 84:2-4) a loaded Colt 45 handgun and narcotics were immediately discovered on his person. (Tr. Vol. 2, 84:4-8; 87:22-25; 88:1-2; 90:4-8; 90:15-16; 94:3-1798:20 to 100:13). Police also discovered currency on the Appellant. (Tr. Vol. 2, 91:9). Police also then discovered a second firearm on the Appellant. (Tr. Vol. 2, 100:14-25; 101; 102:1).

Subsequent laboratory testing identified the narcotics seized from the Appellant as including a sublingual film of buprenorphine and naloxone (Tr. Vol. 2, 148:16-22), 0.220-grams of methamphetamine (Tr. Vol. 2, 149:13-25), 0.63-grams of cocaine base (Tr. 150:21-25; 151:1-17), another 6.76-grams of meth (Tr. Vol. 2, 151:18-25; 152:1-17), and 3.37-grams of marijuana (Tr. Vol. 2, 152:18-25; 153:1-4).

This evidence was established by the law enforcement officers on the scene and supporting lab technicians who evaluated the drugs and guns. (St. Louis City encounter is Tr. Vol. 2: Gorczyca, Dedakovic, Garrett and Davis).

- **The "Expert" Testimony of Det. Scanlon**

Prior to trial the Government provided notice that it intended to call Det. Thomas Scanlon of the St. Louis Metropolitan Police Department to testify as an expert witness pursuant to Federal Rules of Evidence 702, 703, and 705.

- o **Appellant objected to the Government's proposed use of a task force officer to testify as an expert witness under Rule 702 and preserved that objection throughout the case.**

The procedural history of the Government's notice of experts and the Appellant's objections to them is as complex as the rest of the case. Because the case had numerous trial settings, the Government had given notice of its intent to utilize different law enforcement officers in the role of a testifying law enforcement expert for many of the different trial settings. Ultimately however, the Government provided timely notice of its intent to call St. Louis Metropolitan Police Detective Thomas Scanlon to testify as an expert witness at the February 2025 trial. There is no challenge to the timeliness or sufficiency of the Government's disclosure of Det. Scanlon under Rule 16 – the sole challenge is to Det. Scanlon's qualifications to testify as an expert witness under Rule 702.

A motion challenging the Government's ability to call an officer to testify about "drug dealer / trafficker profiles" was originally filed in January 2024 (R. Doc. 252). Then, in advance of the June 2024 trial setting, Appellant filed a motion specifically challenging the qualifications of the Government's proposed Rule 702

9

expert (R. Doc. 284).[7] In this motion (R. Doc. 284), Appellant requested a Daubert hearing and request the district court require the Government to establish the qualifications of its proposed expert. *Id.* That motion was briefed by the parties at R. Doc. 284, 287, and 289. The district court took arguments on that motion and denied it but continued the upcoming trial setting to allow Appellant to consider retaining a rebuttal expert (R. Doc. 291). (NB: Appellant never provided notice of intent to utilize a rebuttal expert).

In advance of the October 2024, trial setting, the Government provided amended notice of its intent to call a detective who was otherwise uninvolved with the case to serve as a testifying expert (R. Doc. 294-1). The Appellant filed a motion to exclude this "drug practices" expert (R. Doc. 294) and that motion was granted in part and denied in part by the district court (R. Doc. 295, -297). The "in-part grant" related to two particular opinions listed in R. Doc. 294-1, but it otherwise allowed the Government to utilize its nominated witness.

Then, in advance of the February 2025, trial setting, the Government made another timely disclosure of its intent to call a St. Louis Metropolitan Police

_____

[7] NB: This is NOT the witness that ultimately ended up testifying at the February 2025 jury trial, but it is the same type of witness – a law enforcement officer, not involved in the arrests or investigation of the Appellant, who would testify regarding "drug distribution" behavior.

Detective to testify as an expert witness at the trial of this matter. During the pretrial conference, counsel for the Appellant orally renewed the previously filed motions to strike the Government's expert witness. (R. Doc. 314, 315). That oral request was denied. *Id.* On the second day of trial counsel for the Appellant again renewed the objection to Det. Scanlon testifying as a Rule 702 witness. (Tr. Vol. 2, 4:8-15; 133:9-24). As the district court had never ordered a *Daubert* hearing, trial counsel made the request to voir dire the witness prior to his testimony to preserve the record. (Tr. Vol. 2, 4:10-15). The district court granted counsel 15-minutes to voir dire the witness. (Tr. Vol. 2, 5:7-11; see also pp. 123-135). Following the voir dire of Detective Scanlon, which occurred outside of the presence of the jury, Appellant's Counsel argued that the opinions to be offered by Det. Scanlon were not based on sufficient facts or data, that they were not the product or application of reliable principles or methods, and were more of the old "I know it when I see it" standard, which was insufficient under Rule 702. (Tr. Vol. 2, 133:16-24). The Appellant's motion was denied by the district court who found that the opinions to be offered by Det. Scanlon went beyond the general understanding of a regular juror and which would be helpful to the jury. (R. Doc. 323; at Tr. Vol. 2 135:14-25). Over the Appellant's continuing objection, Det. Scanlon was allowed to testify as an expert in this matter.

Appellate Case: 25-2148    Page: 16    Date Filed: 08/29/2025 Entry ID: 5553036

- **The qualifications of Det. Scanlon to offer an opinion in this matter as a Rule 702 witness.**

Tom Scanlon is a detective with the St. Louis Metropolitan Police Department. (Tr. Vol. 2, 123:2-25, 124:1). He has been with that department for over 30 years. (Tr. Vol. 2, 130:8-14). Of those 30 years, over 28 of them have been related to drug investigations. (Tr. Vol. 2, 130:20-25; 312:8-10). In his years of law enforcement experience he estimates that he has been involved in several hundred to a thousand drug arrests. (Tr. Vol. 2, 131:1-4). For the eight years prior to trial he was a task force officer with the F.B.I. (Tr. Vol. 2, 170:8-11). At the time of trial, he was assigned to the Intelligence Division and associated with an F.B.I. Violent Drug Taskforce. (Tr. Vol. 2, 125:4-12). Approximately 80% of his work is related to narcotics investigation. (Tr. Vol. 2, 125:13-17).

Prior to this case Det. Scanlon had never testified as an expert witness. (Tr. Vol. 2 124:14-20). In the four years preceding the trial Det. Scanlon had not published any articles or pieces regarding drug distribution of possession. (Tr. Vol. 2, 124:21-24). In that same time period he had never put on any classes regarding drug distribution or drug possession. (Tr. Vol. 2, 124:25, 125:1-3).

Det. Scanlon's role at trial was to offer an opinion that the evidence in the case is indicative of drug distribution, and not simple possession. (Tr. Vol. 2, 126:18-21). Det. Scanlon had no prior law enforcement contact with Appellant. (Tr. Vol. 2,

Appellate Case: 25-2148    Page: 17    Date Filed: 08/29/2025 Entry ID: 5553036

179:16-18). Scanlon was not at the scene of either arrest. (Tr. Vol. 2, 179:9-15; 221-222). Det. Scanlon was not involved in the investigation of Dixson (Tr. Vol. 2, 221:8-13, 21-25; 222:23-24) and he did not write the arrest reports (Tr. Vol. 2, 221:14-15). Nor did Det. Scanlon seize any evidence (Tr. Vol. 2, 221:16-17) or present the case to prosecutors (Tr. Vol. 2, 221:18-20). Instead, he watched *some* of the body camera footage and read the police and lab reports. (Tr. Vol. 2, 179:19-23). Det. Scanlon's sole role in the case was to serve as an expert witness. (Tr. Vol. 2, 221:3-7; 222:15-17). And, he had only become involved in the case the month before trial (Tr. Vol. 2, 222:6-14). In total, Det. Scanlon estimated he had spent about an hour reviewing the case reports. (Tr. Vol. 2, 223:16-18). In total, prior to testifying, Det. Scanlon estimated he spent about two to three hours on the case. (Tr. Vol. 2, 223:3-5). He did not interview any of the officers who were involved in either of the arrests. (Tr. Vol. 2, 223:25; 224:1-2). He watched only a few sections of the bodycams which were provided to him by the Government. (Tr. Vol. 2, 3-8, 24).

Det. Scanlon testified that the opinions he would be providing in this case were based on his experience (Tr. Vol. 2, 126:22-25). Det. Scanlon admitted that there was no literature or empirical sources, no data-driven sources, that tell when a quantity of drugs evolves from personal use to distribution quantities – his testimony would be based on his experience. (Tr. Vol. 2, 127:2-8). Det. Scanlon conceded that the opinions he would be offering at trial were subjective. (Tr. Vol. 2, 127: 9-11).

13

None of the reports Det. Scanlon writes (which apparently inform his subjective opinions) are peer reviewed. (Tr. Vol. 2, 129:16-23).

- **The trial testimony of Det. Scanlon**

After establishing his background and general law enforcement bonafides with the jury (Tr. Vol. 2, pp.170-172) Detective Scanlon began discussing drug investigations generically discussing the use of confidential informants (Tr. Vol. 2, 172:22-23) and controlled purchases (Tr. Vol. 2, 174:2-6). Worth noting is that this case involved NEITHER of those law enforcement tactics or tools.

Det. Scanlon discussed drug trafficking organizations (Tr. Vol. 2, 174:22-25) and the stream of commerce for narcotics (Tr. Vol. 2, 175; 176:1-9). Det. Scanlon established that he had interviewed drug users and dealers (Tr. Vol. 2, 176:10-24). Det. Scanlon testified that he had been involved in investigations that dealt with all of the drugs with which Mr. Dixson had been apprehended (Tr. 177:9-25).

After the witness had been allowed to discuss his background with the jury, counsel again objected to the designation of Det. Scanlon as an expert under Rule 702, and that objection was again overruled with the Court stating that it would "permit this witness to testify as an expert witness with respect to the matters that have been set forth in the expert disclosure." (Tr. Vol. 2, 179:1-7).

Det. Scanlon, at the direction of the United States, then went through each of the drugs seized and testified about that drug's impact on a user, the pricing of the

14

drugs, and that their form and packaging of the drugs and the drug quantities were consistent with distribution and not personal use. (Tr. Vol. 2, pp.183-200 and pp.203-209). Then Det. Scanlon went on to testify about the characteristics of narcotics users versus dealers opining that a "street-level user will only want to possess basically one drug." (Tr. Vol. 2, 209:14-20). He went on to state "[t]he street level dealers, typically in a case like this where you have multiple different narcotics, it just increases their customer base, and they're just looking to make as much money as they can." (Tr. Vol.2, 21-24). Scanlon testified specifically that the quantities of drugs Dixson was found with were indicative of dealing. (Tr. Vol. 2, 209:25; 210:1-13). Scanlon testified that drug users typically have drug use paraphernalia with them (which Dixson did not). (Tr. Vol. 2, 14-25).

Scanlon also testified regarding the guns that were seized during each of the two arrests stating that those types of guns were commonly used with street-level narcotics traffickers to protect themselves and their product and their profit. (Tr. Vol. 2, 212:4-25; 213-214). Then Scanlon opined "to be carrying two firearms while you're conducting your sales could, one, if you're being robbed and they take one firearm, you can pull out another firearm and defend yourself." (Tr. Vol. 2, 214:1-12). Scanlon went on to say that the firearms recovered from Dixson were "typical" of firearms used by street dealers. (Tr. Vol. 2, 215:13-17). Continuing the theme of "tools of the trade" Scanlon testified that with respect to the six phones recovered

15

from Dixson during the two arrests, "typically people in the drug trade, at a minimum, will use two phones." (Tr. Vol. 2, 215:18-25). Then Scanlon went on to discuss electronic tracking of cell phones of people under government investigation and wire taps. (Tr. Vol. 2, 216-217). Of course, Appellant had not been under investigation prior to the traffic stops and was not subject to electronic tracking or wiretaps. Scanlon also opined that large amounts of cash were a tool of the trade (Tr. Vol. 2, 218:10-25) and that the cash seized from the Appellant during the two arrests (approximately $1,200 in St. Charles County and approximately $1,100 in St. Louis City) were an amount inconsistent with what drug users would have on them. (Tr. Vol. 2, pp218-219). Scanlon testified that he did not typically see simple drug users with six phones (Tr. Vol. 2, 220:1-2), or with hundreds of dollars of cash (Tr. Vol. 2, 220:3-5), or with two firearms (Tr. Vol. 2, 220:6-8), or with this quantity of drugs (Tr. Vol. 2, 220:9-11), or with this variety of types of drugs (Tr. Vol. 2, 220:12-19).

Detective Scanlon was the final witness of the trial and after his testimony the Government rested (Tr. Vol. 2, 243:8-9). The jury subsequently returned a finding of guilty on all counts.

- **Appellant renewed his objection post-trial.**

After the jury returned a finding of guilt, the Appellant moved for a new trial citing the error in failing to exclude Det. Scanlon as a witness. (R. Doc. 334). This motion was denied by the district court. (R. Doc.341).

16

## SUMMARY OF ARGUMENT

The 2023 amendments to Federal Rule of Evidence 702 imposed stricter gatekeeping duties on the district court to ensure that the basis for an expert witness' opinion, which should include a "law enforcement drug practices expert," is evidence-based and objective. In this case, the district court committed reversable error by allowing Detective Scanlon to testify as an expert witness under F.R.E. 702, about whether certain evidence in this case was indicative of an "intent to distribute" narcotics rather than simple possession of narcotics.

Appellate Case: 25-2148    Page: 22    Date Filed: 08/29/2025 Entry ID: 5553036

**<u>ARGUMENT</u>**

**STANDARDS OF REVIEW**

This Court reviews evidentiary rulings for abuse of discretion. *United States v. Crawfor*d, 413 F.3d 873, 875–76 (8th Cir. 2005); *Barrett v. Rhodia, Inc*., 606 F.3d 975, 980 (8th Cir. 2010).

The Eighth Circuit has acknowledged an "intriguing juxtaposition" of the discretionary standard of review and the liberal admission of expert testimony under Rule 702 of the Federal Rules of Evidence: "[W]e have recognized that the "liberal thrust" of Rule 702 regarding the admissibility of expert testimony creates "an intriguing juxtaposition with our oft-repeated abuse-of-discretion standard of review." "While we adhere to this discretionary standard for review of the district court's Rule 702 gatekeeping decision, cases are legion that, correctly, under *Daubert*, call for the liberal admission of expert testimony." *In re Bair Hugger*, 9 F.4th at 777 (citation omitted); see also *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 681 F. Supp. 3d 993, 1017 (D. Minn. 2023).

**I.     The 2023 amendments to Federal Rule of Evidence 702 imposed stricter gatekeeping duties on the district court to ensure that the basis for an expert witness' opinion, which should include a "law enforcement drug practices expert," is evidence-based and objective.**

18

**In this case, the district court committed reversable error by allowing Detective Scanlon to testify as an expert witness under F.R.E. 702, about whether certain evidence in this case was indicative of an "intent to distribute" narcotics rather than simple possession of narcotics.**

The Appellant was unduly prejudiced by the district court's failure to exclude the Government's Rule 702 expert Det. Tom Scanlon (See R. Doc. 284, 294, 315 and 323). The district court erred in allowing this witness to testify as a Rule 702 expert. Det. Scanlon's designation as an expert (as pronounced to the jury by the Court) unduly influenced the jury, prejudiced the Appellant's ability to have a fair trial, and should result in the reversal of the conviction and a new trial.

The topics on which an expert proposes to testify are not the proper subject of expert testimony under Rule 702 if they cannot be verified by "reliable principles [or] methods." Expert testimony under Rule 702 must "reflect a reliable application of the principles and methods to the facts of this case."

Federal Rule of Evidence 702 requires:

*A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:*

*(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;*

*(b) the testimony is based on sufficient facts or data;*

19

*(c) the testimony is the product of reliable principles and methods; and*

*(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.*

A district court must ensure that testimony admitted under Rule 702 "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 at 589 (1993). When making the reliability determination, a court may evaluate whether the expert's method has been tested or subjected to peer review and publication, the method's known or potential rate of error, and the method's general acceptance. *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009) (citing *Daubert*, 509 U.S. at 593–94). These factors are not exhaustive, and a court must evaluate the reliability of expert testimony based on the facts of the case. *Id*. A court also may consider "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 449 (8th Cir. 2008). When weighing these factors, a district court must function as a gatekeeper to separate "expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001).

20

The Eighth Circuit has expounded on the Rule 702 standard. Proposed expert testimony must meet three criteria to be admissible under Rule 702. "First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). "Second, the proposed witness must be qualified to assist the finder of fact." *Id.*. "Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." *Id.* To meet the third criterion, the testimony must be "based on sufficient facts or data" and be "the product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case." *Id.* (quoting Fed. R. Evid. 702(b)–(d)).

Expert testimony is not admissible if it is "speculative, unsupported by sufficient facts, or contrary to the facts of the case," *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006), such that the testimony is "so fundamentally unsupported that it can offer no assistance to the jury," *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir. 2006).

Under Rule 702, the trial court has a gatekeeping responsibility to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (citing

Appellate Case: 25-2148     Page: 26     Date Filed: 08/29/2025 Entry ID: 5553036

*Daubert*, 509 U.S. at 597). "When making the reliability and relevancy determinations, a district court may consider: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community." *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) (citing *Daubert*, 509 U.S. at 593–94). "This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands." *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005). "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Id*.

"The inquiry envisioned by Rule 702 is a flexible one," designed to exclude "vague theorizing based on general principles" or "unsupported speculation," but not requiring an opinion to be "a scientific absolute in order to be admissible." *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 914–16 (8th Cir. 2017); see also *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999) ("[T]he test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys

in respect to its ultimate reliability opinion."); *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005) (stating that the "evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands.") (citation omitted).

"There is no requirement that the district court always hold a *Daubert* hearing prior to qualifying an expert witness under Federal Rule of Evidence 702." *United States v. Evans*, 272 F.3d 1069, 1094 (8th Cir.2001) (finding no abuse where officer testified about the operation of prostitution rings based on his education, training, and experience). "Federal Rule of Evidence 702 permits a district court to allow the testimony of a witness whose knowledge, skill, training, experience or education will assist a trier of fact in understanding an area involving specialized subject matter." *United States v. Molina*, 172 F.3d 1048, 1056 (8th Cir.1999). It is well within the discretion of a district court "to allow law enforcement officials to testify as experts concerning the modus operandi of drug dealers in areas concerning activities which are not something with which most jurors are familiar." *Id*. (citation omitted). Even so, under *Daubert* and Rule 403 of the Federal Rules of Evidence, the probative value of the expert testimony must not be substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury. *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786.

Appellate Case: 25-2148    Page: 28    Date Filed: 08/29/2025 Entry ID: 5553036

However, on information and belief this Court has not considered this standard and how it applies to law enforcement "modus operandi" experts since the 2023 amendments to Rule 702, which "make clear that reliability, both in theory and application, is the hallmark of admissible expert testimony." *Post v. Hanchett*, 2024 WL 474484, at *2 (D. Kan. Feb. 7, 2024) (excluding tire expert) (citation and quotation marks omitted). A comprehensive history of Rule 702 and its amendments can be found in *Engilis v. Monsanto Co.*, --- F.4th ---, 2025 WL 2315898 (9th Cir. – August 12, 2025).

Under the amended Rule 702, "[c]ourts must probe more deeply" and "[o]nly after the proponent has proved it more likely than not that the opinion is based in the evidence on which it purports to rely and represents a reliable application of the expert's methodology do challenges to the bases of an expert's opinion go to weight alone." *Hellen v. American Family Insurance Co.*, 2024 WL 1832451, at *1 (D. Colo. March 19, 2024) (excluding opinions of insurance practices expert).

The district court's "responsibility to screen expert testimony, encompasses the requirement that expert testimony be "based on sufficient facts or data," Fed. R. Evid. 702(b). This element "requires foundation." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1023 (9th Cir. 2022).

Det. Scanlon was not involved with this case in any way prior to being asked to be a witness as trial approached. He offered anecdotal opinion based on his

subjective personal experience. There is no methodology in this type of testimony. There are no widely acceptable tests or principles governing this type of opinion. Certainly, there is no rate or error or measure of opinion. Given the very nature of the witness and his anticipated testimony it cannot be "the product of reliable principles and methods" nor can it possibly "reflect a reliable application" of principles and methods which do not exist. The witness' testimony was purely subjective and so fundamentally unverifiable that it can offer no assistance to the jury and therefore it should have been excluded under the Court's gatekeeping role under the amended Rule 702.

## <u>CONCLUSION</u>

For the foregoing reasons, Appellant respectfully requests that this Court reverse the judgment of the district court, vacate the conviction in this matter, order a new trial, and remand this matter to the district court for further proceedings; and for such further relief as the Court may deem just and proper in the premises.

Respectfully submitted,

**NEWTON BARTH, L.L.P.**

By: /s/ Talmage E. Newton, IV
Talmage E. Newton IV, MO56647
talmage@newtonbarth.com
555 Washington Ave., Ste. 420
St. Louis, Missouri 63101
Telephone: (314) 272-4490
Facsimile: (314) 762-6710
***ATTORNEY FOR APPELLANT***

25

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with Fed. R. App. P. (32)(a)(7)(B) in that it contains 5,921 words. This brief complies with Fed. R. App. P. 32(a)(5) and (6) in that it contains proportionally-spaced typeface using Microsoft Word 2019 in Times New Roman font, size 14. In compliance with 8th Cir. R. 28(h)(2), I certify that this brief and the addendum have been scanned for viruses and are virus-free.

_____
Talmage E. Newton IV, MO56647

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 28, 2025, Appellant's Brief and the Certificate of Compliance were filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

_____
Talmage E. Newton IV, MO56647

Appellate Case: 25-2148    Page: 31    Date Filed: 08/29/2025 Entry ID: 5553036